**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x          **FOR PUBLICATION**
In re:                                                      :
                                                            :
          DREIER LLP,                                       :          Chapter 11
                                                            :          Case No. 09-15051 (SMB)
                              Debtor.                       :
-----------------------------------------------------------------x
SHEILA M. GOWAN, Chapter 11 Trustee          :
of DREIER LLP,                                              :
                                                            :
                              Plaintiff,                    :
                                                            :          Adv. Pro. No. 10-04278 (MG)
          v.                                                :
                                                            :
NOVATOR CREDIT MANAGEMENT, *et al.*,          :
                                                            :
                              Defendants.                   :
-----------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN**
**PART DEFENDANTS' MOTION TO DISMISS**

*A P P E A R A N C E S:*

DIAMOND McCARTHY LLP
*Attorneys for Sheila M. Gowan, Chapter 11 Trustee for Dreier LLP*
620 Eighth Avenue, 39th Floor
New York, NY 10018
By:     Howard D. Ressler, Esq.

-and-

1201 Elm Street, 34th Floor
Dallas, TX 75270
By:     J. Benjamin King, Esq. (argued)

-and-

909 Fannin Street
Suite 1500
Houston, TX 77010
By:     Stephen T. Loden, Esq.

1

KAYE SCHOLER LLP
*Attorneys for Defendants Novator Credit Management Limited and certain affiliated entities*
425 Park Avenue
New York, NY 10022
By:    Nicholas J. Cremona, Esq.

-and-

Three First National Plaza
70 West Madison Street – Suite 4100
Chicago, IL 60602
By:    Eric H. Sussman, Esq. (argued)


UNITED STATES DEPARTMENT OF JUSTICE
United States Attorney's Office
One St. Andrew's Place
New York, NY 10007
By:    Matthew L. Schwartz, Esq. (argued)


KLESTADT & WINTERS, LLP
*Attorneys for Official Committee of Unsecured Creditors*
570 Seventh Avenue
17th Floor
New York, NY 10018
By:    Tracy L. Klestadt, Esq. (argued)
       Brendan M. Scott, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion to dismiss filed by Novator Credit Management Limited,

Novator Credit Advisors LLC, Novator Credit Opportunities Master Fund, Novator Credit

Luxembourg SARL, Novator Credit Funding B.V., Novator Credit Opportunities Fund, Novator

Credit Opportunities Fund LLC, and Novator Partners LLP (collectively, "Novator" or the

"Defendants"), asserting that the complaint fails to state a claim upon which relief can be granted

pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), made applicable herein by

Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012 (the "Motion to Dismiss").

2

Pursuant to the avoidance provisions of §§ 544, 547, 548(a), 550 of the Bankruptcy Code (the "Code") and various sections of New York Debtor and Creditor Law[1] (the "NYDCL"), the chapter 11 trustee, Sheila Gowan ("Gowan" or the "Trustee") seeks to avoid and recover prepetition transfers by Dreier LLP (the "Debtor") to the Defendants in the course of the Ponzi scheme perpetrated by Marc Dreier.[2]  In total, the Trustee seeks the avoidance and recovery of $16,801,025 from the Defendants to the Dreier LLP estate for distribution to creditors.  The Trustee concedes that Novator was a "net loser" in the Ponzi scheme orchestrated by Marc Dreier because Novator received transfers less than the $30 million purported loan Novator made to Solow during the course of the Note fraud.

This opinion is one of three issued today resolving motions to dismiss in similar adversary proceedings commenced by the Trustee against hedge funds that purchased bogus, forged promissory notes (the "Solow Note" or "Notes" or "Solow Notes").[3]  The motions to dismiss in all three cases raised many of the same issues; as a result, briefing and argument in the cases was coordinated.   The Court's opinion in *Gowan v. The Patriot Group, LLC (In re Dreier LLP)*, Adv. Proc. No. 10-03524 (MG) (Bankr. S.D.N.Y. June 16, 2011) (the "*Patriot Group* Opinion"), resolves two potentially case-dispositive issues raised in all three cases.  The Patriot Group Opinion also sets out the principles that apply to the state and federal actual and constructive fraudulent transfer claims.  Rather than repeating the lengthy analyses of these issues in this opinion, the discussion in *Patriot Group* Opinion is incorporated by reference and familiarity with the *Patriot Group* Opinion is assumed.  As to the two potentially case-

---

[1]        N.Y. DEBT. & CRED. LAW § 270 *et seq.* (McKinney 2011).

[2]        The complaint also asserts a claim for equitable subordination (and an informal objection to Novator's proof of claim) against the Defendants pursuant to section 510(c) of the Code.  11 U.S.C. § 510(c).

[3]        *Gowan v. Amaranth LLC. (In re Dreier LLP)*, Adv. Proc. No. 10-03493 (MG), ECF Doc. # 53 (Bankr. S.D.N.Y. June 16, 2011); *Gowan v. The Patriot Group, LLC (In re Dreier LLP)*, Adv. Proc. No. 10-03524 (MG), ECF Doc. # 46 (Bankr. S.D.N.Y. June 16, 2011).

dispositive issues—(i) whether the Preliminary Forfeiture Order entered in the criminal case against Marc Dreier divested the Dreier LLP estate of any rights to the funds sought to be avoided and recovered, and (ii) whether the funds that are the subject of the avoidance actions were held in trust such that they did not form part of the Dreier LLP bankruptcy estate—the Court concludes that the Motion to Dismiss is denied.

Specific to the Defendants here, the Court concludes that the Motion to Dismiss the claims against the Non-Transferee Defendants (defined below) is granted in its entirety with leave to amend the complaint within thirty days for failure to adequately plead that the Non-Transferee Defendants were the entities for whose benefit the transfers were made and/or were subsequent transferees of the funds transferred to the Transferee Defendants (defined below). As to the Transferee Defendants, the Motion to Dismiss is granted as to the constructive fraudulent transfer claims brought under NYDCL §§ 273, 274 and 275 and Bankruptcy Code § 548(a)(1)(B). Because Novator is a "net loser," the complaint fails to state a claim for constructive fraudulent transfer as the Trustee concedes that the transfers were made for "reasonably equivalent value" under the Bankruptcy Code, or "fair equivalent" value under the NYDCL. The Motion to Dismiss is denied as to the actual fraudulent transfer claims brought under NYDCL §§ 276 and 276-a and Bankruptcy Code § 548(a)(1)(A). The Motion to Dismiss is denied as to the preference claim and the claim for equitable subordination.

## I.     BACKGROUND

The Trustee filed this adversary proceeding against the Defendants seeking avoidance and recovery of certain transfers made by Dreier LLP to the Defendants during the course of Marc Dreier's Ponzi scheme. The complaint identifies three entities, Novator Credit Funding BV ("Novator Funding"), Novator Credit Opportunities Master Fund ("Novator Master Fund")

and Novator Credit Luxembourg SARL ("Novator Luxembourg"), as the initial transferees of the funds from Dreier LLP (the "Transferee Defendants").  As to the other Novator entities, Novator Credit Management Limited ("NCML"), Novator Credit Advisors LLC ("Novator Advisors"), Novator Credit Opportunities Fund ("Novator Opportunities"), Novator Credit Opportunities Fund LLC ("Novator Opportunities LLC") and Novator Partners LLP (collectively, the "Non-Transferee Defendants"), the Trustee identifies them as the entities for whose benefit the transfers were made and/or the subsequent transferees of the initial transfers.  *See* 11 U.S.C. § 550(a)(1), (2).

## A.    Allegations Against Defendants

The Trustee filed a complaint against Defendants on November 22, 2010 (the "Complaint"), and Defendants filed the Motion to Dismiss on January 28, 2011.  (ECF Doc. #s 1, 7–9.)  On February 28, 2011, the Trustee filed her Memorandum in Opposition to Novator's Motion Pursuant to Fed. R. Bankr. P. 7009 and 7012(b) to Dismiss the Trustee's Complaint ("Trustee Mem.").  (ECF Doc. # 22.)  On March 14, 2011, the Defendants filed their Reply Memorandum in Further Support of Novator's Motion Pursuant to Fed. R. Bankr. P. 7009 and 7012(b) to Dismiss the Trustee's Complaint.  (ECF Doc. # 29.)

### 1.    Original Complaint

The Trustee seeks avoidance and recovery of the transfers from Dreier LLP to the Defendants during the course of the Ponzi scheme in the aggregate amount of $16,801,025, comprised of repayment of principal and interest payments.  (Compl. ¶ 1.)  The Trustee seeks $15,688,803 as actual and constructive fraudulent conveyances under the relevant provisions of the Bankruptcy Code and the NYDCL and $550,000 as a preferential transfer under § 547 of the

Bankruptcy Code.  The Trustee also seeks equitable subordination of the proof of claim filed by

the Defendants and lodges an informal objection to the Defendant's proof of claim.[4]

The Complaint asserts the following claims against the Defendants:

| Count No. | Allegation |
|:---:|---|
| I | Actual Fraudulent Conveyance – 11 U.S.C. §§ 548(a)(1)(A) and 550 |
| II | Constructive Fraudulent Conveyance – 11 U.S.C. §§ 548(a)(1)(B) and 550 |
| III | New York Law Fraudulent Conveyance – 11 U.S.C. §§ 544 and 550 and NYDCL §§ 276, 276-a, 278 and 279 |
| IV | New York Law Fraudulent Conveyance – 11 U.S.C. §§ 544 and 550 and NYDCL §§ 273, 278 and 279 |
| V | New York Law Fraudulent Conveyance – 11 U.S.C. §§ 544 and 550 and NYDCL §§ 274, 278 and 279 |
| VI | New York Law Fraudulent Conveyance – 11 U.S.C. §§ 544 and 550 and NYDCL §§ 275, 278 and 279 |
| VI | Preferential Transfer – 11 U.S.C. §§ 547 and 550 |
| VIII | Equitable Subordination and Objection to the Novator Proof of Claim – 11 U.S.C. § 510(c) |

## 2.    Novator's Involvement in the Fraud

Novator Luxembourg purchased a fake Solow Note on March 23, 2006 with a face

amount of $20 million with an interest rate of 11% (the "First Note").  (*Id.* ¶ 43–44.)  On April 3,

2006, Novator Luxembourg transferred $19,900,000 to the 5966 Account.  (*Id.* ¶ 44.)  From July

2006 to January 2007, Novator Luxembourg received payment of interest on the First Note from

the 5966 Account.  (*Id.* ¶ 45–47.)  On March 29, 2007, Novator Funding, after being assigned

all Novator Luxembourg's rights under the "Term Loan Agreement," entered into an "Extension

Agreement" extending the term of the First Note for one year.  (*Id.* ¶ 48.)  From April 2007 to

January 2008, Novator Funding received payment of interest from the 5966 Account.  On March

---

[4]    On March 30, 2009, NCML filed a proof of claim in the main bankruptcy case for an unliquidated amount on behalf of itself and all other Novator entities noted above, including both the Transferee Defendants and Non-Transferee Defendants.  (Compl. ¶ 13.)

29, 2008, Novator Funding signed a "Second Extension Agreement" extending the maturity of the First Note by another year.  (*Id.* ¶ 53.)  Thereafter, from March 2008 to September 2008, Novator Funding received payment of interest on the First Note from the 5966 Account.  (*Id.* ¶ 54–56.)  However, Novator never received repayment of principal on the First Note.  In total, Novator received transfers from Dreier LLP on the First Note totaling $5,532,969, which was less than the $19,900,000 originally paid for the First Note.

On April 3, 2007, Novator Opportunities purchased a second fake Solow Note for $10 million (the "Second Note").  (*Id.* ¶ 58.)  Also on April 3, 2007, Novator Opportunities determined that Novator Master Fund was the proper party to the Term Loan Agreement with respect to the Second Note, and Novator Master Fund executed a revised Term Loan Agreement. (*Id.*)  Dreier executed the Second Note in favor of Novator Opportunities and it is not clear whether a revised Second Note was issued in favor of Novator Master Fund.  (*Id.*)  On the same date, Novator Master Fund transferred $9,950,000 to the 5966 Account.  (*Id.* ¶ 59.)  From July 2007 to January 2008, Novator Master Fund received payments of interest from the 5966 Account.  (*Id.* ¶ 60–62.)  On or about April 3, 2008, Novator Funding signed a "Limited Extension Agreement" extending the maturity date on the Second Note to June 3, 2009.  (*Id.* ¶ 63.)  On April 3, 2008, Novator Master Fund received a transfer of interest on the Second Note from the 5966 Account.  (*Id.* ¶ 64.)  And on May 12, 2008, Novator Master Fund received a transfer of $10,168,056 from the 5966 Account as a repayment of principal of the Second Note plus interest.[5]  (*Id.* ¶ 65.)

---

[5]    As the Trustee concedes that the Defendants are a "net loser" after lumping together the amounts paid for the First and Second Notes, the Court has no reason to determine whether, under some circumstances, repayment on separate promissory notes should be considered separately, such that a transferee may be a "net loser" as to one note, but a "net winner" on another note, subject to avoidance of amounts in excess of principal on a constructive fraudulent transfer theory under the Bankruptcy Code and/or the NYDCL.  *See* Trustee Mem. at 8 ("Because Novator is a 'net loser,' it gave reasonably equivalent value for all the transfers it received, even though many of the transfers were ostensibly interest payments.").

The Complaint alleges that certain elements of these transactions should have raised "red flags" with each of the defendants that are the subject of the Trustee's avoidance actions. The Trustee alleges the following suspicious circumstances: (1) Solow's use of outside litigation counsel, Marc Dreier, to raise capital; (2) Solow's robust financial condition at the time of the investments; (3) the comparatively high interest rates associated with the Solow Notes; (4) the "amateurish" financial statements of Solow provided to the Note investors by Dreier; (5) certain provisions of the "Term Loan Agreements" prohibiting Note investors from contacting Solow; and (6) the use of a Dreier LLP attorney trust account to complete the transaction. (*Id.* ¶ 18–27.)

Specific to the Defendants, the Complaint focuses on the relationship between the Defendants and Adrian Kingshott ("Kingshott"), a former employee of Novator Advisors, to allege that Novator knew or should have known of the fraud at the time of the transfers. (Compl. ¶ 18–27.) Kingshott, also formerly employed by Amaranth Advisors, LLC (or an affiliate thereof) ("Amaranth"), another investor in the Note fraud, dealt with Kosta Kovachev ("Kovachev"), who acted as a broker between Dreier and the defrauded hedge funds. At the time that Kovachev was attempting to broker Notes to Amaranth and Kingshott (prior to the Defendants' investment in the Note fraud), Kovachev was defending a securities fraud complaint brought by the SEC accusing Kovachev of participating in a $28 million "boiler-room" Ponzi scheme that marketed fake timeshares to the eldery. (*Id.* ¶ 30.) According to the Trustee, this information was public and available on the SEC's website during Kingshott's and Amaranth's dealings with Kovachev, and Kingshott had actual notice of the SEC's charges against Kovachev after engaging Kroll Associates to investigate Kovachev. (*Id.* ¶ 31–32.) The Trustee contends that even after having "actual knowledge" of Kovachev's involvement in a Ponzi scheme, Amaranth invested in the Note fraud. (*Id.* ¶ 32.)

8

Kingshott left Amaranth in October 2005 and began soliciting participants in Dreier's Note fraud in return for a commission for Notes sold with 9% interest rates or higher.  (*Id.* ¶ 34.) Kingshott joined Novator Advisors in March 2006, as Managing Director of Novator Advisors. (*Id.* ¶ 35.)  Dreier LLP arranged for the creation of Novator Advisors, which provided investment advice to the Novator entities who received transfers from Dreier LLP.  (*Id.*)  Kingshott, with Dreier's approval, continued to solicit at least sixteen potential participants in the Note fraud even after joining Novator.  (*Id.* ¶ 35–36.)  Kingshott reviewed and approved the information packages that Dreier sent to potential investors.  (*Id.* ¶ 36.)  Kingshott also reviewed the confidentiality agreement that Dreier required potential investors to sign that provided that the investor

> . . . will not initiate or maintain contact with any officer, director or employee of the Company regarding the Company's business or the transaction except with the express written permission of the undersigned counsel for the Company.  All communications regarding any possible Transaction or requests for information concerning the Company will be submitted or directed only to the undersigned counsel as authorized representative of the Company.

(*Id.* ¶ 37.)  According to the Trustee, any reasonable investor would have found such a provision unusual and Kingshott, as Dreier's solicitor, should have found it unusual as well.  (*Id.*)  Finally, the Trustee asserts that Kingshott was aware of the implausible story Dreier gave many investors regarding how Dreier came to run the fraudulent note program—Dreier told investors that Solow was allowing him, as a favor, to run the program with little oversight by Solow as a way to develop clients.  (*Id.* ¶ 38.)  The Trustee asserts that Kingshott should have questioned the legitimacy of the proposed transaction and it is "absurd for any company in Solow's position to entrust a note program and the debt of the company, with limited operational oversight, to an attorney as a favor to help the attorney develop business."  (*Id.*)  The Trustee asserts that

9

Kingshott was an agent of Novator Advisors and, accordingly, Novator Advisors is charged with

Kingshott's knowledge.  Also according to the Trustee, Novator Advisors was an agent of or an

advisor to the Novator entities who received distributions from Dreier LLP, those entities are

charged with Kingshott's knowledge as well.  (*Id.* ¶ 39.)

### 3.      Structure of the Novator Entities

The Trustee asserts liability against the Transferee Defendants as initial transferees and

the Non-Transferee Defendants as entities for whose benefit the transfers were made and/or as

subsequent transferees.  *See* 11 U.S.C. § 550(a)(1), (2).  In this regard, the structure of the

Novator entities is relevant.

NCML manages Novator Opportunities.  (*Id.* ¶ 7.)  Novator Funding is a part-owner of

Novator Opportunities.  (*Id.*)  Novator Opportunities owns 100% of the Novator Master Fund.

(*Id.* ¶ 8.)  Novator Master Fund owns 100% of Novator Luxembourg.  (*Id.* ¶ 9.)  Novator

Funding, Novator Master Fund, Novator Luxembourg, and Novator Opportunities were all

counterparties to various documents governing Novator's investments in the Dreier Note fraud.

(*Id.*)  Novator Master Fund, Novator Luxembourg, and Novator Funding received transfers of

Dreier LLP property as a part of the Ponzi scheme.  Novator Advisors and Novator Partners LLP

are trading advisors to certain of the Novator entities.  (*Id.* ¶ 11, 12.)

The Trustee seeks avoidance and recovery from the Transferee Defendants, Novator

Funding, Novator Master Fund and Novator Luxembourg as the initial transferees of the

transfers from Dreier LLP.  As to the Non-Transferee Defendants, the Trustee asserts liability as

either recipients or beneficiaries of transfers made to the Transferee Defendants based largely on

the corporate structure of the Novator funds.

## II.    DISCUSSION

### A.    Standard on a Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (citations and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Furthermore, a complaint that does not "plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior" that does not "suggest an unlawful agreement" must be dismissed. *Id.* at 1950 (citation omitted).

Following the Supreme Court's decision in *Iqbal*, courts use a two-prong approach when considering a motion to dismiss. *See, e.g.*, *McHale v. Citibank, N.A. (In re The 1031 Tax Group)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009); *Weston v. Optima Commc'ns Sys., Inc.*, No. 09 Civ. 3732(DC), 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009) (Chin, J.) (acknowledging a "two-pronged" approach to deciding motions to dismiss); *S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, No. 08 CV 5175(KMW), 2009 WL 3151807, at *3 (S.D.N.Y. Sept. 30, 2009) (Wood, J.) (same); *Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, No. 08 Civ. 6195(PKC), 2009 WL 2850230, at *3 (S.D.N.Y. Aug. 28, 2009) (Castel, J.) (same). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in the factual garb. *Kiobel v.*

*Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must

"assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true")

(citing *Iqbal*, 129 S.Ct. at 1949–50); *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir.

2009) (stating that the court must "accept as true all of the factual allegations set out in the

plaintiff's complaint, draw inferences from those allegations in the light most favorable to the

plaintiff, and construe the complaint liberally") (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d

Cir. 2001)); *Boykin v. Keycorp*, 521 F.3d 202, 204 (2d Cir. 2008) ("In reviewing a motion to

dismiss, we accept the allegations in the complaint as true.") (citation omitted); *Spool v. World

Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the

pleadings liberally, bald assertions and conclusions of law will not suffice.") (internal quotation

marks omitted).  Second, the court must determine if these well-pleaded factual allegations state

a "plausible claim for relief."  *Iqbal*, 129 S.Ct. at 1951 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at

1950 (citation omitted).  A claim is plausible when the factual allegations permit "the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at

1949 (citation omitted).  Meeting the plausibility standard requires a complaint to plead facts that

show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation

omitted).  A complaint that only pleads facts that are "merely consistent with a defendant's

liability" does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 557 (2007) (internal quotation marks omitted)).  "A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.*

(quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)).  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool*, 520 F.3d at 183 (citation omitted).

Courts deciding motions to dismiss must draw all reasonable inferences in favor of the nonmoving party and must limit their review to facts and allegations contained in (1) the complaint, (2) documents either incorporated into the complaint by reference or attached as exhibits, and (3) matters of which the court may take judicial notice. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citation omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *DDR Const. Servs., Inc. v. Siemens Indus., Inc.*, No. 09 CIV. 09605 RJH, 2011 WL 982049, at *1 (S.D.N.Y. Mar. 22, 2011). Courts also consider documents not attached to the complaint or incorporated by reference, but "upon which the complaint *solely* relies and which *[are] integral to the complaint*." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)); *see also Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931(RJS), 2009 WL 928279, at *8 (S.D.N.Y. Mar. 30, 2009) (Sullivan, J.); *Grubin v. Rattet (In re Food Mgmt. Grp.)*, 380 B.R. 677, 690 (Bankr. S.D.N.Y. 2008) ("A court may even consider a document that has not been incorporated by reference where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotation marks omitted) (quoting *Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 374 B.R. 113, 119 (Bankr. S.D.N.Y. 2007), *aff'd*, 386 B.R. 428 (S.D.N.Y. 2008), *aff'd*, 318 Fed. App'x. 36 (2d Cir. 2009)).

When fraud is pleaded, Rule 9(b) requires the plaintiff to plead fraud with particularity.
*See Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987). Pursuant to
Rule 9(b) "in alleging fraud or mistake, a party must state with particularity the circumstances
constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's
mind may be alleged generally." FED R. CIV. P. 9(b). The Second Circuit has stated that the
complaint must: "(1) detail the statements (or omissions) that the plaintiff contends were
fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were
made, and (4) explain why the statements (or omissions) were fraudulent." *Harsco Corp. v.
Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted). Although the second part of Rule
9(b) permits scienter to be pleaded generally, the pleader must "allege facts that give rise to a
strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d
Cir. 1994) (citation omitted); *see also The Responsible Pers. of Musicland Holding Corp. v. Best
Buy Co., Inc. (In re Musicland Holding Corp.)*, 398 B.R. 761, 773 (Bankr. S.D.N.Y. 2008).
Plaintiffs may not allege "fraud by hindsight." *See Shields*, 25 F.3d at 1129 (quoting *Denny v.
Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.)). A strong inference of fraudulent intent
"may be established either (a) by alleging facts to show that defendants had both motive and
opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial
evidence of conscious misbehavior or recklessness." *Id.* at 1128; *accord ATSI Commc'ns, Inc. v.
The Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). The purpose of Rule 9(b) is to further
three goals: "(1) providing a defendant fair notice of plaintiff's claim, to enable preparation of
defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the
number of strike suits." *DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d
Cir. 1987) (citation omitted).

14

For claims brought by a bankruptcy trustee, "courts take a more liberal view when examining allegations of actual fraud . . . in the context of a fraudulent conveyance, since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (internal quotation marks omitted) (quoting *Picard v. Taylor (In re Park S. Secs., LLC)*, 326 B.R. 505, 517–18 (S.D.N.Y. 2005)); *Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) (citation omitted).  Accordingly, courts have recognized that "allegations of circumstantial evidence are sufficient to establish fraudulent intent," *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 643 (Bankr. S.D.N.Y. 2009), because "the trustee's lack of personal knowledge is compounded with complicated issues and transactions which extend over lengthy periods of time." *Stratton Oakmont*, 234 B.R. at 310 (citation omitted).  However, "relaxing the particularity requirement in bankruptcy cases should not be construed to eliminate that requirement altogether." *Id.* at 311 (citation omitted).

Rule 9(b) imposes additional limitations.  First, a pleader cannot allege fraud based upon information and belief unless the facts are "peculiarly within the opposing party's knowledge." *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976 (1975), *overruled on other grounds by Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1100 n.9 (1991); *accord Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997) (citation omitted).  In those cases, the pleader must nonetheless allege facts upon which the belief is founded.  *Campaniello Imps.*, 117 F.3d at 664.  In addition, "group pleading is generally forbidden because each defendant is entitled to know what he is accused of doing." *O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 257–58 (Bankr. S.D.N.Y. 2008) (citation omitted); *see also DiVittorio*, 822 F.2d at 1247 ("Where

15

multiple defendants are asked to respond to allegations of fraud, the complaint should inform

each defendant of the nature of his alleged participation in the fraud.").

> **B.** **The Complaint Fails to State a Claim Against the Non-Transferee Defendants**

To state a claim against the Non-Transferee Defendants, the Complaint must allege that

the Non-Transferee Defendants were either the entities for whose benefit the transfers were made

or were the subsequent transferees of the transfers. 11 U.S.C. § 550(a)(1), (2). The Defendants

argue that the Complaint fails to allege that the Non-Transferee Defendants fall within one of

these two categories. In response, the Trustee, relying on the corporate structure of the Novator

entities, contends that the Non-Transferee Defendants financially benefited from the transfers or

were the likely recipients of subsequent transfers from the Transferee Defendants. The Court

concludes that the Complaint fails to state a claim against the Non-Transferee Defendants grants

the Motion to Dismiss with leave to amend the Complaint within thirty days.

Sections 550(a)(1) and (2) allow for the trustee to recover transfers made to "the entity

for whose benefit such transfer was made" or "any immediate or mediate transferee of such

initial transferee." 11 U.S.C. § 550(a)(1), (2). In order to establish the liability of a transferee

for whose benefit the transfer was made, "[t]he benefit must be 'direct, ascertainable and

quantifiable' and must correspond to, or be commensurate with, the value of the property that

was transferred." *Enron Creditors Recovery Corp. v. J.P. Morgan Secs., Inc. et al. (In re Enron*

*Creditors Recovery Corp.)*, 407 B.R. 17, 33 (Bankr. S.D.N.Y. 2009), *rev'd on other grounds,*

422 B.R. 423 (S.D.N.Y. 2009) (citing *Reily v. Kapila (In re Int'l Mgmt. Assoc.)*, 399 F.3d 1288

(11th Cir. 2005)). "Incidental, unquanitifable, or remote" allegations of benefit are not

sufficient. *Id.*

To establish an entity as a subsequent transferee, courts have required that the complaint contain the "necessary vital statistics—the who, when, and how much" of the purported transfers to establish an entity as a subsequent transferee of the funds. *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 32 (Bankr. E.D.N.Y. 2007).

### 1.   Were Transfers Made For the Benefit of the Non-Transferee Defendants?

With respect to the initial transfers being made for the "benefit" of any of the Non-Transferee Defendants, the Trustee's allegations are conclusory and speculative. As to Novator Opportunities, the Complaint merely states that it "financially benefited from the transfers from DLLP to Novator Master Fund." The Complaint does not contain any non-conclusory allegations of any financial benefit. (Compl. ¶ 8.) As to NCML, not even alleged in the Complaint, but raised for the first time in the Trustee's response, the Trustee asserts another conclusory and speculative allegation that NCML is a beneficiary of the transfers because they are trading advisor to the Transferee Defendants. (Trustee Mem. at 22–23.) However, the most that the Trustee uses to support these bare allegations are that these entities "wanted the transfers to occur . . . they both arranged for them to happen . . . their financial conditions were directly tied to the [Transferee Defendants], and . . . [it is reasonable to conclude] profits and revenues from their management or advisory relationship [were received]. *Id.* Finally, there is no mention in the Complaint of a tangible benefit accruing to the other remaining entities, Novator Opportunities LLC, Novator Partners LLP and Novator Advisors whatsoever. In fact, the only allegation that these entities benefited from the transfers to the Transferee Defendants is based on their position within the Novator corporate structure. (Compl. ¶¶ 6–13, 44–66, 67–115.)

The above allegations are not sufficient for the Court to conclude that the transfers benefited the Non-Transferee Defendants based on the "closely intertwined" relationship among

all of the Novator entities.  The Trustee relies on *Picard v. Merkin (In re Bernard L. Madoff Inv. Secs., LLC)*, 440 B.R. 243, 269–70 (Bankr. S.D.N.Y. 2010) to suggest that the allegations in the Complaint are sufficient.  (*See* Trustee Mem. at 23–24.)  In *Merkin*, the court was asked to decide whether the trustee had met its burden of establishing that the defendants were subsequent transferees under 11 U.S.C. § 550(a)(2) sufficient to seek avoidance of certain transfers.  The court found that the complaint satisfied the Rule 8(a) pleading requirement because it provided "fair notice" to the defendants of the claims against them because certain exhibits attached to the complaint indicated the percentage of fees and commissions that the defendants purported to receive on account of the transfers to an initial transferee.  *Id.*  Thus, the complaint adequately apprised the defendants—recipients of fees and commissions—of the claims against them because the complaint specified "which transactions are claimed to be fraudulent and why, when they took place, how they were executed and by whom."  *Id.* (citing *Stratton Oakmont*, 234 B.R. at 318).

In this case, the Trustee has not provided the same level of specificity.  All that it is set forth in the Complaint to support a claim under a benefit theory with respect to the Non-Transferee Defendants entities are unsubstantiated assertions that, because of the corporate structure of the Novator entities, it would be "reasonable to conclude" or "reasonable to infer" that the Transferee Defendants received the transfers from Dreier LLP for the benefit of the other Novator entities.  (*See generally* Compl.; Trustee's Mem. at 22–24.)  In short, though the Trustee may have established facts showing that the transfers were made from Dreier LLP to the Transferee Defendants, the Trustee has not met her burden of showing that these transfers were received for a "direct, ascertainable and quantifiable" benefit to the Non-Transferee Defendants. *In re Enron Creditors Recovery Corp.*, 407 B.R. at 33.

### 2.    Are the Non-Transferee Defendants Liable as Subsequent Transferees?

With respect to the initial transfers being subsequently transferred to the Non-Transferee Defendants, thus making these entities "subsequent transferees," the Trustee similarly fails to set forth the "necessary vital statistics—the who, when, and how much." *In re Allou Distribs., Inc.*, 379 B.R. at 32. As described above, the Trustee relies only on conclusory and speculative allegations to support the assertion that the transfers were subsequently transferred to the Non-Transferee Defendants. The closest the Trustee gets to stating a claim against any of the five Non-Transferee Defendants as subsequent transferees is the allegation that certain trading advisors to the Transferee Defendants may have received "profits and revenues" by virtue of their positions in the fund structure. (*See* Trustee Mem. at 23–24.) Without more, however, the Court cannot conclude that the Non-Transferee Defendants ever received "profits or revenues" sufficient to establish them as subsequent transferees. Here, there is no indication (1) whether the Novator trading advisors were supposed to receive any commissions or fees from the Novator Transferees, and (2) even if there was some arrangement for commissions or fees among the Novator entities, whether any such amounts were *actually* received, *i.e.*, by who, date, and amount. In short, the Trustee has failed to plead that the funds were subsequently transferred to the Non-Transferee Defendants.

### C.    Claims Against Transferee Defendants

The Complaint asserts claims for actual and fraudulent transfers under the NYDCL and the Bankruptcy Code seeking avoidance and recovery of the transfers made from the 5966 Account to the Transferee Defendants. For the reasons explained below and in the *Patriot Group* Opinion, the Motion to Dismiss the claims for constructive fraudulent transfer under the

NYDCL and the Bankruptcy Code are granted with prejudice and the Motion to Dismiss the claims for actual fraudulent transfer under the NYDCL and the Bankruptcy Code are denied. In addition, the Motion to Dismiss the claims for preferential transfers and equitable subordination under the Code is denied.

> **1.    Claims for Constructive Fraudulent Conveyance Under the NYDCL and the Bankruptcy Code**

Counts II, IV, V and VI seek avoidance and recovery of the transfers made from the 5966 Account to the Transferee Defendants under § 548(a)(1)(B)[6] of the Bankruptcy Code and NYDCL §§ 273,[7] 274[8] and 275,[9] respectively. The Trustee has conceded that Novator was a "net

---

[6]    Bankruptcy Code § 548(a)(1)(B), provides as follows:

> (a)
> (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>> (B)
>>> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>> (ii)
>>>> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

[7]    NYDCL § 273 provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to

loser" because it received less than the full value of the purported loan it made to Solow. (Trustee Mem. at 8.) In addition, the Trustee "does not dispute that Novator provided 'reasonably equivalent value' under the Bankruptcy Code or 'fair equivalent' value under the DCL because DLLP's transfers reduced a common law claim, such as restitution or unjust enrichment, that Novator may have had against DLLP." (*Id.*) In addition, the Trustee recognizes that whether they were called payments of interest or repayments of principal, it is clear that Novator did not receive repayment in full on the purported loan made to Solow. (*Id.*)

As stated in the *Patriot Group* Opinion, the purpose of the NYDCL does not permit the court to "invalidate transfers that were made for fair consideration, at least where no actual intent to hinder, delay or defraud creditors has been shown." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995); *see also Atlanta Shipping Corp.*, 818 F.2d at 249–50 ("In general, repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor.") (citations omitted). Accordingly, whether

---

his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y. DEBT. & CRED. § 273.

[8]    NYDCL § 274 provides:

Conveyances by persons in business: Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

N.Y. DEBT. & CRED. § 274.

[9]    NYDCL § 275 provides:

Conveyances by a person about to incur debts: Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

N.Y. DEBT. & CRED. § 275.

payments of interest or repayment of principal, the Trustee concedes that the Debtor received "fair equivalent" value for the transfers made to Novator and applicable Second Circuit case law prohibits avoidance of transfers where such transfers satisfy an antecedent debt. Thus, the Motion to Dismiss is granted as to Counts IV, V and VI, seeking avoidance and recovery under a theory of constructive fraud under the NYDCL.

Count II, seeking avoidance and recovery of the transfers on a theory of constructive fraud under the Bankruptcy Code, is likewise dismissed. The Trustee has conceded that Novator provided "reasonably equivalent value" under the Bankruptcy Code for the transfers it received from the 5966 Account. (Trustee Mem. at 8.) Because the transfers satisfied an antecedent debt and the Debtor received "reasonably equivalent value" for the transfers, the Trustee has not stated a claim for constructive fraud under the Bankruptcy Code. *See Geron v. Palladin Overseas Fund, Ltd. (In re AppliedTheory Corp.)*, 330 B.R. 362, 364 (S.D.N.Y. 2005) (concluding that satisfaction or securing of antecedent debt is fair consideration as a matter of law); *Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*, 301 B.R. 801, 805–06 (Bankr. S.D.N.Y. 2003) (Bernstein, C.J.) ("Past consideration is good consideration. An 'antecedent debt' satisfies the requirement of fair consideration and reasonably equivalent value, and putting aside transfers to insiders, the payment of an existing liability is not fraudulent.") (internal quotation marks and citations omitted)), *vacated, Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*, No. 04 Civ. 1295 (KMW), 2009 WL 1810112, at * 5 (S.D.N.Y. June 25, 2009). The Motion to Dismiss Count II is granted. [10]

---

[10]    In light of the Court's determination that the Trustee's claims for constructive fraudulent conveyance under the NYDCL and the Bankruptcy Code are dismissed because the Trustee has conceded that the Debtor received "fair equivalent" value under the NYDCL and "reasonably equivalent value" under the Bankruptcy Code, the Court need not address whether the Transferee Defendants took the transfers in "good faith" under NYDCL § 278(1) and Bankruptcy Code § 548(c).

### 2.    Claims For Actual Fraudulent Conveyance Under the NYDCL and the Bankruptcy Code

Count I seeks avoidance and recovery of the transfers made to the Defendants as actual fraudulent conveyances under § 548(a)(1)(A) of the Bankruptcy Code.  Section 548(a)(1)(A) provides for the avoidance of an interest in property of the debtor within two years prior to the filing of its bankruptcy petition provided that the transfer was made with an "actual intent to hinder, delay or defraud."  11 U.S.C. § 548(a)(1)(A).  The "plaintiff  must establish the actual fraudulent intent of the transferor/debtor."  *MarketXT*, 361 B.R. at 395; *see also Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) ("Cases under § 548(a)(1)(A) indicate that it is the intent of the transferor/[debtor] and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance under the Bankruptcy Code.").  The transferor's fraudulent intent has been established by operation of the Ponzi scheme presumption. *See Patriot Group* Opinion section II.D.1. Accordingly, the Trustee has stated a claim for actual fraudulent conveyance under the Bankruptcy Code and the Defendants' Motion to Dismiss Count I is denied.

Count II of the Complaint seeks avoidance of the transfers on a theory of actual fraud under NYDCL § 276.  Section 276 of the NYDCL allows the Trustee to avoid any "conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors."  NYDCL § 276.  Count II also seeks recovery of attorneys' fees incurred by the Trustee in seeking recovery of such transfers under NYDCL § 276-a.

As explained in the *Patriot Group* Opinion, to establish a claim for actual fraudulent conveyance under NYDCL § 276, the Trustee must establish the actual fraudulent intent of the transferor, and need not plead the actual fraudulent intent of the transferee. *See Patriot Group*

23

Opinion at section II.D.2.  The transferor's actual fraudulent intent has been established by virtue of the Ponzi scheme presumption.  *See Patriot Group* Opinion at section II.D.1.  Accordingly, the Motion to Dismiss Count II, actual fraudulent conveyance under NYDCL § 276, is denied. The Motion to Dismiss the claim for attorneys' fees under NYDCL § 276-a is likewise denied, but attorneys' fees can only be recovered if the Trustee establishes actual fraudulent intent of the transferee.[11]

### 3.    Preferential Transfers

In light of the Court's conclusion that it cannot conclude, as a matter of law, that the funds transferred to the Transferee Defendants were not "property of the estate" under the forfeiture argument or the trust fund argument, Defendants' challenge to the preference claim in Count VII, seeking avoidance and recovery of transfers made to Novator Funding within ninety days of the petition date, fails.  *See Patriot Group* Opinion at sections II.B and II.C.  Therefore, the Motion to Dismiss Count VII is denied.

### 4.    Equitable Subordination and Objection to Novator Proof of Claim

Count VIII seeks equitable subordination and objection to the Defendants' proof of claim.  Equitable subordination is expressly authorized by § 510(c) of the Bankruptcy Code, which provides that notwithstanding subsections (a) and (b):

(c) [A]fter notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or

---

[11]    The Court will not entertain the Transferee Defendants' protestations of good faith at the motion to dismiss stage.  *See* Patriot Group Opinion at section II.D.1.  Nor is it relevant, at this stage, to consider whether Novator was "diligent" in its inquiry into the transactions.  Likewise, the Court need not consider whether Kingshott's conduct can be imputed to Novator or whether the "adverse interest" exception applies to his conduct.

> part of another allowed claim or all or part of an allowed interest to
> all or part of another allowed interest; or
>
> (2) order that any lien securing such a subordinated claim
> be transferred to the estate.

11 U.S.C. § 510(c).

Here, the Trustee argues that Novator's proof of claim should be subordinated because the "Complaint sets forth allegations supporting the inference that Novator actually knew it received payments from DLLP pursuant to a fraudulent scheme." (Trustee Mem. at 21.) If proven on summary judgment or at trial, the requisite conduct required to equitably subordinate Novator's claim may be present if it was aware of the fraud at the time of the transfers. *See 80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994) (inequitable conduct may be lawful but still "conduct that shocks one's 'good conscience'" may give rise to a claim for equitable subordination). However, the Court need not resolve the issue at this stage as the inquiry whether the requisite inequitable conduct and the defenses thereto are factual inquiries not appropriate for a motion to dismiss. As Judge Gerber noted in *Adelphia Commc'ns Corp. v. Bank of America, N.A., et al. (In re Adelphia Commc'ns Corp.)*, 365 B.R. 24, 69 (Bankr. S.D.N.Y. 2007) in the context of claims for equitable subordination, "[t]he nature of the underlying conduct (and, at least arguably, any resulting injury) will have to be fleshed out as a factual matter—a task that is, of course, inappropriate when considering motions under Rule 12(b)(6)." Accordingly, the Motion to Dismiss as it relates to Count VIII seeking equitable subordination of and objection to Novator's proof of claim is denied.

### III.    CONCLUSION

For the reasons discussed above, the Complaint is hereby dismissed in its entirety as to the Non-Transferee Defendants with leave to amend the Complaint within thirty days.  As to the Transferee Defendants, the Motion to Dismiss Count I and III is denied.  The Motion to Dismiss Counts II, IV, V and VI is dismissed with prejudice.  The Motion to Dismiss Counts VII and VIII seeking avoidance of allegedly preferential transfers and equitable subordination of Novator's proof of claim is denied.

**IT IS SO ORDERED.**

DATED:        June 16, 2011
              New York, New York

                              **/s/Martin Glenn**
                              MARTIN GLENN
                              United States Bankruptcy Judge